## Stenger's Adm'r v. Lockman.

October 18, 1949.

M. Joseph Schmitt and Allen Schmitt for appellant.

Richard B. Crawford and Kendrick Lewis for appellee.

JUDGE HELM—Affirming.

Appellant, Frank Stenger, as administrator, filed suit against appellee, Mary Lockman, seeking to recover $3,300 on a note payable to Joseph Stenger. A jury returned a verdict for appellee. This appeal is from a judgment entered on that verdict.

Appellant, Frank Stenger, and appellee, Mary Lockman, are brother and sister. They are the only children of Joseph Stenger and Rosa Stenger. Their parents were divorced before 1931. Joseph Stenger died January 24, 1944; Rosa Stenger died November 21, 1947. Frank was appointed administrator of his father's estate December 3, 1947. This action was filed on the same day.

Appellant alleged that on January 1, 1934, appellee executed and delivered a written promissory note whereby she promised and agreed to pay to the order of Joseph Stenger the sum of $3,300 with interest. Appellee answered, denying that she executed any note on January 1, 1934; plead that her mother, Rosa Stenger, executed a note for $3,300 to Joseph Stenger on January 1, 1931; that she signed the note as surety only, and that she did not receive any part of the consideration; that after the note sued on was delivered to the payee, it was without her knowledge altered and changed by erasing the figure "1" which occurred therein and inserting in its place the figure "4" so that the date appears to be January 1, 1934 instead of the true date January 1, 1931. She first plead the 15-year statute of limitations, and then plead the 7-year statute of limitations applicable to sureties. By amendment she plead that at the time of the execution of the note sued on, towit, January 1, 1931, she was a married woman, the wife of Frank Lockman.

The note in question was signed by Rosa Stenger and Mary A. Lockman. Appellant knew the signature of appellee, his sister. Asked, "Is that her signature on that note?" he answered, "That is it." He demanded payment of the note. The date of the note is January 1, 1934. The note introduced by him is as follows: "$3,300.00 Shively, Ky., January 1, 1934. One year after date, we or either of us promise to pay to the order of Joseph Stenger Thirty-Three Hundred and no/100 Dollars Value received with interest at the rate of 4 per cent per annum from date, and with interest at six per cent per annum after due until paid. Negotiable and

Payable at Liberty Bank & Trust Co., Louisville, Ky.

"Mrs. Rosa Stenger

"Mary A. Lockman"

Appellant stated that he saw the note the year it was written; that he first saw it in 1934; that he did not know in "whose handwriting the figures '34' are"; that he did not note any difference in the handwriting in the body of the note and the "34"; he did not note any difference in the condition of the ink in the original note and the figures "34"; his sister at one time was married to Frank Lockman; she was not married to him at the time the note was executed; he did not know when she was divorced. When shown enlarged photostatic copies of the note and asked as to the figures "34", he stated: "That number was always blurred like and what done it I don't know." He and his sister are the only children of their parents. When asked if he knew if appellee received the money mentioned in the note, he stated that she did; that he "brought the money there to them, they were always together"; that he got the money from his father; he did not remember when or where his father gave it to him; he counted the money, it was $3,300; he could not recall whether it was in $100 bills, $1,000 bills, whether 1's, 5's, 10's, or what denomination; that he handled the money, "right in Mary Lockman's house, and my mother's"; he said: "Here is the money you all had me to ask for."

According to appellee's version, she signed the note introduced in evidence, signed it in 1931; at the time she signed it, she was the wife of Frank Lockman; she was divorced from Lockman in June, 1931; she signed the note for her mother; she did not "receive any of the money on the note"; after her mother died "they called me to Mr. Schmitt's office and when I got there he showed me this note and the figures had been changed. It was a '34' in the place of it being '31' "; she told Mr. Schmitt that the date on the note had been changed.

Maxwell Allen, an examiner of questioned documents, was of the opinion that the date on the note had been altered. By enlarged photographs, microscopic and chemical examinations, he concluded that after the note had originally been executed it had been folded, the line

of the fold being through the date; that the underlying figures were a "3" and a "1"; that these figures had been overwritten with the figures "34"; that "when the note was folded, this ink was dry, and flaked off. * * * You will notice in the '3' and the '4' the ink deposits at the bottom of each numeral, it shows that the ink was wet and ran into the fold. That forces the conclusion that the overwriting was not done at the same time that the rest of the note was written. * * * These facts force me to the conclusion that the original writing was '31' and that the overwriting was done sometime after this note had been folded and carried around or filed away somewhere."

The photostatic copies of the note filed with the record show the figures "34" to be much larger and much more heavily shaded than the other letters and figures of the note. The overwriting of the figures "34" is apparent from an enlarged photostat filed with the record. The opinion of Mr. Allen is supported by the testimony of Sam F. Messex, of the Citizens Fidelity Bank and Trust Company, Pope McAdams, Vice President and Cashier of the First National Bank of Louisville, and by Paul Jagielky of the First National Bank.

Appellee was recalled and stated that her brother only gave her mother $2,800; that this was in 1931; she did not get any part of the $2,800.

Christine Stenger, wife of appellant, stated that she was working for Judge Ewing when he was sworn in, in 1934; that when she got home from work one day her father-in-law was there and asked her to keep that note for him; she kept it a little while and he came back and asked her for it; at that time the note was in the same condition it is now; the "34" was blurred.

At the conclusion of the evidence, the court instructed the jury:

"(1) If you believe from the evidence that Mrs. Lockman signed and executed the note on January 1, 1934, you will find for the plaintiff, unless you further believe from the evidence that Mrs. Lockman signed the note as surety for her mother, in which event you will find for her.

"(2) If you believe from the evidence that Mrs.

Lockman signed the note on January 1, 1931, then you will find for Mary A. Lockman.

"(3) If you find for the plaintiff, you should award him the sum of $3300, with interest thereon at the rate of 4% per annum for the first year and 6% per annum thereafter.

"(4) If you find for the defendant, you will simply say so by your verdict, and no more."

The jury returned the following verdict: "We, the jury, find for the defendant." The court entered judgment dismissing plaintiff's petition.

Appellant assigns as errors: (1) The court erred in permitting appellee to testify concerning transactions with decedent, and (2) the court did not properly instruct the jury.

Appellant and appellee are the only persons interested in the outcome of this action. Appellant testified on direct examination as to the signatures on the note, the date, and demand for payment. On redirect examination, he testified as to receiving the money from his father and delivering it to his sister and mother; that he saw this note the year it was written. He further testified that he first saw the note in 1934; that his sister was divorced from Frank Lockman when the note was executed and the money transferred from his father to his sister and mother.

Civil Code of Practice, Section 606(2), provides: "* * * no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done * * by one who is * * * dead when the testimony is offered to be given except for the purpose, and to the extent, of affecting one who is living, and who, when over fourteen years of age and of sound mind, heard such statement, or was present when such transaction took place, or when * * * the decedent, or a representative of, or someone interested in, his estate, shall have testified against such person, with reference thereto."

A party may testify for himself concerning a transaction with a decedent, where another, adversely interested, has testified relative to the same transaction.

Waters v. Davis, Ky., 2 S. W. 695, See, 19 Ky. Digest, Witnesses, Key 175(2).

Black v. McCarley's Ex'r., 126 Ky. 825, 104 S. W. 987, cited by appellant, is not in point. There, no one testified against the wife, Mrs. Black. Here, appellant, who is personally interested, testified against his sister.

Appellant maintains that the instructions as given did not submit the issues in accordance with Black v. McCarley, supra, and Tyler v. First National Bank of Winslow, 150 Ky. 115, 150 S. W. 665. Neither party offered any instructions. The instructions given by the court were clear, concise, and were not unfavorable to appellant.

The judgment of the circuit court is affirmed.